WARNER, Judge.
In this appeal appellant claims that the trial court erred in terminating his parental rights to his son because HRS failed to make reasonable efforts to reunify the minor child with the father due to his inability to speak English and the failure of HRS to provide an interpreter for meetings with HRS officials. In addition, appellant claims that the evidence is not clear and convincing that’ abandonment of the child was proved. We affirm.
Nine month old S.J. was taken into HRS custody when his mother was hospitalized and later died. Appellant came into the picture two months later, acknowledging paternity. The evidence is conflicting as to what involvement he had with the child before that time. The Department provided appellant with a permanent placement plan requiring the father to have a stable residence for at least six months; to have stable employment for three months or more; to fulfill his financial responsibility for the child; to provide medical information and sign medical releases for the child; and to work with medical personnel to learn more about the child’s *184 medical problems and how to deal with them, the child having been born with chronic immune deficiency. To accomplish the last two goals, appellant was referred to a Creole speaking physician, whom appellant visited.
S.J. was placed with a cousin of appellant where appellant testified he visited with the child every day. The guardian ad litem testified that she saw appellant at the cousin’s house only four times. During those visits appellant would not communicate with the guardian, even though she would attempt to use the cousin’s children to help interpret in an attempt to get S.J. and appellant together.
There is conflicting evidence as to appellant’s contributions to S.J.’s support. He testified that he gave his cousin $50 every week. However, the HRS worker was advised by the cousin that appellant failed to make any contribution.
After three months with the cousin, S.J. was removed because the workers found that the placement was not an environment that was conducive to raising a child. In fact, conditions were so bad at the home, that the worker made an abuse referral as to the cousin’s children. Appellant was advised and visited with S.J. at the HRS office. Appellant brought an interpreter with him at that time. Although appellant testified that he did not call for visits more often because he received the “runaround” when conversing through an interpreter, the HRS worker stated that she received messages and set up appointments when asked. Only two visits were scheduled.
It was undisputed that appellant did not contribute to S.J.’s support after he left the cousin’s home. Even appellant agrees that is so, although he claims that it was because HRS did not explain to him why the child was removed from the cousin’s home. It appeal’s that appellant may have had a fairly steady job but it does not appear from the evidence that appellant had a stable home.
HRS filed a petition for termination of parental rights in 1993 contending that appellant had failed to substantially comply with the performance agreement and had failed to support the child or show any interest in the child’s physical, mental or emotional health.
At the final hearing, appellant’s counsel asked the court to abate the proceeding because appellant had problems with the English language and also with the interpretation given to him in the court proceedings. The court commented that she had personally handled this case since its inception in 1991 and that appellant had come to almost all the proceedings. The court noted that at the court hearings the court interpreter had gone over the permanent placement tasks with him, and she noted further that appellant had other people in court with him to fully advise him of his required tasks. Furthermore, since October of 1992, appellant had counsel representing him in the proceedings. At no time prior to the final hearing was any request for an interpreter made.
Denying the request for abatement, the judge ruled that she found clear and convincing evidence to support the petition and that it was in the manifest best interest of the child that parental rights be severed. The written order finds that appellant neglected and abandoned S.J. and that he failed to substantially comply with the court’s permanent placement plan.
Appellant claims that HRS did not make “reasonable efforts” to reunify S.J. and appellant by failing to provide an interpreter to ensure that appellant understood the process. However, the evidence reveals that either appellant had a friend along to interpret for him, or in court proceedings an interpreter was provided to appellant. Appellant claims that the performance agreement itself should have been provided to him in Creole. However, at no time prior to the final hearing did appellant complain that he was unable to communicate with HRS or that he failed to understand what was required of him as S.J.’s parent.
By statute, a parent’s failure to substantially comply with a performance agreement is evidence of neglect or abandonment unless the court finds that the parent’s failure to comply is due to lack of financial resources or due to the failure of the department to make reasonable efforts to reunify the family. See § 39.464(5), Fla.Stat. .(1991). The only defi *185 nition of “reasonable efforts” is found in section 39.41(4)(b) which addresses the court’s powers of disposition in dependency proceedings. It defines “reasonable efforts” as “the exercise of reasonable diligence and care by the department and assumes the availability of appropriate services to meet the needs of the child and the family.” Although appellant claims that the termination should be denied because HRS failed to provide him with an interpreter, appellant was either accompanied by his own interpreter at HRS offices or provided with a court interpreter as well as an attorney. At no time did his attorney request other interpreter services for appellant.
To accept appellant’s argument that his failure to substantially comply with the performance agreement was due to HRS’ failure to provide an interpreter to make sure he understood what was expected of him requires the court to infer from the evidence that he did not understand the terms because he didn’t comply with them. But there is ample evidence in the record that he knew what he was required to do and chose not to comply. While we recognize that a foreign language barrier can be a significant, hurdle to persons dealing with the juvenile justice system, in this case court interpreters and an attorney were provided, and we cannot say that based on this record HRS failed in its duty to provide reasonable efforts to reunite this father and his child.
With respect to the trial court’s finding that the father had abandoned the minor child, the findings of the trial court are amply supported by the record that he failed to evince a settled purpose to assume parental duties, see section 39.01, and that the efforts he did make were marginal at best. The cases cited by appellant are all distinguishable on their facts.
We therefore affirm the ruling of the trial court.
GLICKSTEIN and POLEN, JJ., concur.